The opinion of the court was delivered by
Huston, J.
This suit was brought against Fulweiler and his sureties, on a bond dated the 8th of June, 1807, for the payment of one hundred pounds on the 30lh of August, 1808. Pleas, payment, &c. nil debet, and a special plea stating the failure of consideration. Replication and issues. There were five other suits between the same parties on other bonds.
On the 9th of February, 1820, an agreement was entered into by the parties, and filed of record in the cause.
The above suits are on bonds, which were part of the consideration of a tract of land bought by the defendant from P. Klinger, in 1807. The deed from Klinger contained a general warranty. For about seventy-eight gcres of the best part of the said land, Klinger had not a good title, and the title for the same is not now in the defendant. About eighteen or twenty acres of the said seventy-eight acres are cleared. Partial payments have been made on some of the bonds. The plaintiffs are to deliver to the defendant a good title for the land mentioned in the deed from Klinger; the title to be approved of by the court. If a good title be delivered, as above, the defendant claims a deduction from the said bonds, for the following reasons and on the following accounts:—
[Here follows a specification of the grounds of defence, j
The agreement proceeds thus: It is agreed that the court determine whether all, or any, and which of the said grounds of deduction claimed by the defendant are, if true, legal off-sets, or ought in law to be deducted from the amount of the said bonds. The amount of said off-sets or deductions to be ascertained by three auditors, or a majority of them, to be appointed by the court.” Several other provisions follow, among which are some agreements relating to the manner in which the costs of the said suits are to be paid.
On the 25th of March, 1824, the following proceedings appear in this cause:—
By the Court. The court being of opinion, on argumept, that the title now tendered is defective, at least so far as regards the title of Lydia Hallowell and Ann Brown, the agiéement of the parties cannot now be carried into effect further. And, on motion of the plaintiffs, the agreement is now set aside, because it has become inoperative, cannot be carried into effect, and to suffer it to remain, would be a perpetual bar to the plaintiff’s proceeding, .which would be manifestly unjust.
*53 The above opinion was filed, at the request of the defendants’ counsel, who opposes setting aside the agreement. And the defendants’ counsel afterwards objected to the jury being sworn, alleging the agreement to be in force, and that the court could not set it aside.
The above proceedings formed the subject of the first error.
The agreement consists of an admission of certain facts, and of a submission of the cause to be decided in a way and on terms different from the ordinary course of trial by jury. It would seem, the first part, the agreement to certain facts stated, was not considered as at all impaired by the decision of the cause; for it was read at the trial, and considered by the court as an admission of those facts, and was rightly so read and considered. As to that part of it, the court could not exercise any power over it, and, as I take it., did not. It may be, that if an agreement admits facts, the party may be permitted t.o show he did so under the influence of mistake or surprise. Unless this is done, an admission of faets in a cause on the record, would not be struck off that record by the court. It would seem the true meaning of the order of the court, was to strike off the submission of the determination of the cause to the court, and to arbitrators, and to relieve the plaintiffs from that part of the agreement which would tie up the plaintiff, until he got. a title to the whole of the land sold.
The whole land sold was more than six hundred acres, the part of which the title was defective was originally seventy-eight acres. This belonged to seven co-heiresses of Thomas Bye, and from five of these the defendant obtained a conveyance. The shares of Lydia Hallowell and Ann Brown, two of the seven, were outstanding. There was then a hardship, perhaps injustice, in depriving the plaintiffs of the price of the whole seventy-eight acres, because a title to two-sevenths could not be obtained. But it is said the plaintiffs'might, for aught that appears, have procured the title to those two shares. Of this, we think the court below were the proper judges, and that their decision on this point is not the subject of a writ of error. The case comes within a principle often decided in this court, and is not stronger than refusing a new trial, which is not to be reversed on error, though even we should think a new trial ought to have been granted. That court has decided, that the agreement, in this particular, ought not now to be carried into effect; and they were right in considering it as the agreement of the plaintiff to obtain and give to the defendant a good title for the whole, if it was in their power to do so.
After the jury was sworn, several exceptions were taken as to evidence, and several are here taken to the charge of the court.
1. The defendant offered in evidence a receipt for taxes assessed on one of the tracts included in the sale to the defendant, while it was unseated; and also receipts of Oliver Evans for money paid *54 him on his claim as patentee of the right to a hopper boy and flour press in the mill when the property was sold, &c.
There is some uncertainty as to the first. The plaintiff’s counsel say the receipt for taxes was given in evidence, and admit it ought to be, if it was for taxes left unpaid by Klinger on one of the tracts while unseated, and the bill of exceptions is in this respect vague. It ought to have been admitted, if it was a lien; and the other receipts for money paid to Evans as clearly ought not to have been, and were rightly rejected, because no patent to Evans was shown: and the money was paid voluntarily, and it is conceded to have been decided that Evans’s patent was void.
2. On the property sold to the defendant was a grist mill. The defendant offered to prove the situation of the mill, the dam, race, &c., and that by reason thereof, the mill was of little value. This was rejected,—and it clearly ought to have been admitted. The defendant did not ask the contract to be rescinded, because there was a defect of title as to a small part. He keeps the property, and is entitled to an abatement of the purchase money, in proportion to the part which he does not get. That proportion can only be ascertained by proving the relative value of it, compared with what he does get, and this is ascertained by going into particulars; that is, the value of each part. The mill, at the time of the sale, might have been of value equal to all. the land sold with it, or only of value equal to one-tenth or one-twentieth of the whole property sold. It seems to me, that in the hurry of a trial, it did not strike the mind of the judge, as offered for this purpose, or he would have admitted it. In his charge to the jury, he states the law as it is settled; viz. that the deduction of price is to be determined by comparing the value of the land lost, with that of the property to which he got a good title, and which he retains. The evidence offered was proper, and ought to have been received, and there was error in rejecting it. •
The title to the seventy-eight acres before mentioned was traced to a certain Thomas Bye, who, on the 7th of March, 1808, conveyed it to his seven daughters, on the 1st of June, 1812. These daughters, and the husbands of such of them as were married, joined in a power of attorney to'three persons, (one of whom was Ann Brown,') or any one of them, to sell and convey this tract. Brown conveyed this tract, and duly executed a conveyance to William Ramsey on the 10th of March, 1823. He signed the names of the principals to the deed, and affixed their seals, and, among ethers, that of his own wife, Ann Brown. The name of Lydia Hallowell, one of them, and a married woman, was interlined, wherever it occurred, in the acknowledgment of the power. The power was duly acknowledged by the principals, and the acknowledgment of the married daughter was in the form prescribed by the act, for passing the estates of married women. After Brown had executed the deed to Ramsey for his principal, he *55 acknowledged it as attorney for the said, (naming all his principals,) to be his act and deed. On the 23d of March, 1824, William Ramsey conveyed the seventy-eight acres in question to the plaintiff.
All this evidence was objected to and admitted, and the effect of it, when admitted, formed the subject of exception to the charge of the court. That married women may, jointly with their husbands, give a power to convey lands, and that such power, when acknowledged in the manner prescribed by the act of assembly for passing the estate of married women, will be good, has been heretofore decided in this court. If it were not, it would unsettle many estates.
The power was not executed by the attorney for more than ten years after its date, and the counsel insisted the principals must be supposed dead. In those cases where that presumption is admitted, it is coupled with the circumstance that the person has removed from his former place of abode, and not been heard of for seven years. No removal—no inquiry was.alleged here.
But the acknowledgment is objected to. There are some cases to be found, where much strictness would seem to be required in the forms of those conveyances by attorneys. But in Coombe’s Case, 9 Co. Rep. 76, 77, the court put it on the ground that the act is good, if it appears that he did it as attorney, and that it is immaterial whether it is stated. The principal, by his attorney, does the act, or the attorney, as attorney for the principal, does the act. The difference is form, and nothing but form.
There is no error in this part of the case.
The next error assigned, is to the court rejecting evidence of the expense of the defendant in certain ejectments, brought for the recovery of this seventy-eight acres, one of which was discontinued immediately before the trial of this cause, and after Ramsey made his release to the defendant. I understand expenses as something distinct from legal costs, which I understand the court in a subsequent part of the cause to say, are to be allowed to the defendant.
When a man purchases, and has a general warranty in his deed, he may, when ejectment is brought against him for the land, or a part of it, give notice to the warrantor to appear and defend the suit. And if notice is duly given, and he does not defend, the record of the recovery is conclusive evidence against him, in an action of covenant on the warranty. If the vendee does not give notice, but appears and defends, it has not been allowed him to recover his counsel fees paid, and his own expenses; for there may be no ground of defence, and he shall "not subject his vendor, without his knowledge and against his will, to more than he is liable to on his covenant of warranty. This, generally. There may possibly be exceptions, where the warrantor has left the state, and expense must be incurred before he can be found,and notice served; *56 or in cases of fraud in the warrantor. For any thing appearing in this record, the court was right.
Thirteen points were submitted to the court below, on which they were required to deliver opinions to the jury.
I do not mean any reflection on the counsel in this cause particularly; but the practice, under the act requiring the judge to reduce his opinion to writing, is becoming a grievance. The counsel knows the points on which his cause must turn, and may properly request an explicit opinion on those points. It cannot, however, conduce to the advancement of justice, to subdivide these points ad infinitum, or to requii’e a written opinion on evei'y point having the most remote connexion with any part of the evidence, and sometimes having no connexion with the matter trying. Errors ai’e assigned here;—on some of these, the opinion given suffices. I proceed to notice the ot.hei’s.
The second point submitted to the court below was, “that Philip Klinger could acquire no right to the land in dispute, (the seventy-eight acres,) by a settlement and warrant subsequent to the warrant and survey of Mark Halfpenny, (the title of Thomas Bye.) Whether he could or not might depend on many matters, and on whether the statute of limitations came to his aid. But to answer it was not necessary in this cause; for it was admitted on record, by the agreement filed, that Klinger did not acquire any right by his warrant and settlement, nor until he purchased five-sevenths of the warrant in the name of Mark Halfpenny; and the only matter trying was what, under all the circumstances of this case, should be deducted from the purchase money on account of the two-sevenths, which were not conveyed to Philip Klinger under the title to Mark Halfpenny.
Exception has been taken, that the fourth position was not fully answered; but it was fully answered, taking into view the answer to the first point, and it was not necessai’y to i’epeat what was thei’e said. The act does not requii’e a judge to file an opinion on the same point more than once in the same cause; and if an answer is found in any part of the opinion filed, he need not repeat it.
The next error assigned, not before noticed, is in the answer to the tenth point, near the close of it, where the court say, “ The real loss the purchaser has or is likely to sustain by reason of the defect, is a proper subject of deduction,—the amount a jury is called on to fix, under all the circumstances.” The phrase, is likely to sustain—is objected to, and it would have been better omitted. The plaintiff had procui’ed the reference to be struck off, because he could not obtain the shares of those two married women. He asks the cause to be tried while those shai’es are oustanding. They must then be taken as lost to the defendant; they are valid subsisting rights. It will not do for the plaintiff to admit this, all through his cause, and at the close of it say perhaps, they *57 they will never claim them, and therefore you must not be allowed for them. I am not sure the judge meant what is alleged now to have been his meaning. I incline to believe these words slipped into the charge inadvertently.
The court below having stated that the jury might, and in a certain view of the cause advised the jury, to deduct the costs up to a certain point in this cause, and his legal costs in the ejectment, the on!)' point remaining is as to the interest. The answer of the court on this point is right as far as it goes. It is objected that it does not meet the case trying: perhaps it might have been put more explicitly in the point submitted to the court.
In this case the defence is, want of title to a part;—that still exists, and the plaintiff admits he cannot give it. It is then like the case where part is recovered from the vendee by adverse title; in which case the price of that part, in proportion to the residue, is to be deducted from the bond, before any interest is calculated on the bond. But to this there may be an exception, if the vendee has enjoyed the land during the time interest is demanded; and this is a matter of evidence, and to be submitted to the jury.
But for rejecting the evidence of notice, &c., the judgment is reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.